

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
09/16/2020

| | | |
|---|---|---|
| In re: | § | Case No. 20-34408 |
| | § | Jointly Administered |
| KEIV HOSPITALITY, LLC, et al. | § | Chapter 11 |
| | § | |
| | § | |
| Debtors. | § | |
| | § | |

### AGREED FINAL ORDER AUTHORIZING KEIV HOSPITALITY, LLC'S USE OF CASH COLLATERAL AND GRANTING, *INTER ALIA*, REPLACEMENT LIENS AS ADEQUATE PROTECTION TO SECURED NOTEHOLDER

Keiv Hospitality LLC, a debtor in possession in the above-captioned jointly administered chapter 11 case ("Debtor" or "Borrower" and "Case" respectively), seeks authority to use the cash collateral of its secured creditors, Deutsche Bank Trust Company, as Trustee for the Benefit of the Registered Holders of Morgan Stanley Bank of America Merrill Lynch Trust 2013-C11, Commercial Mortgage Pass-Through Certificates, Series 2013-C11 ("Secured Noteholder"), and the Small Business Administration ("SBA", and collectively with Secured Noteholder the "Secured Parties"), and the Secured Parties consent to the use of Cash Collateral (as defined below) on the terms and conditions set forth herein. Based on the foregoing, the Debtor, and the Secured Parties (the "Parties") consent to entry of this agreed final order authorizing use of Cash Collateral (the "Order") based upon the following facts:

### RECITALS

A.     The Debtor owns the real property located at 22055 Katy Freeway, Katy, Texas (the "Property").

B.     The Debtor operates a hotel at the Property known as Hampton Inn & Suites.

C.     On September 1, 2020 (the "Petition Date"), the Debtor, along with Keivans Hospitality, Inc. (collectively "Debtors") filed voluntary petitions for relief (the "Bankruptcy Case") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the

"Bankruptcy Court").

D.       By Bankruptcy Court order, dated September 3, 2020 the Debtors' bankruptcy case are being jointly administered for procedural purposes only.

E.       On or about June 28, 2013, Bank of America, N.A. (the "Original Lender") made a loan (the "Loan") to the Debtor in the original principal amount of $3,750,000.

F.       The Loan is evidenced by, among other things:  (i) a promissory note dated July 28, 2013 (the "Note"), which was made and signed by the Borrower and delivered to the Original Lender in the original principal amount of $3,750,000.00, and (ii) a loan agreement between the Debtor as borrower and the Original Lender, as lender, dated June 28, 2013 (the "Loan Agreement").

G.       The Loan and the obligations of the Borrower thereunder are secured by, among other things, a Deed of Trust, Assignment of Leases and Rents and Security Agreement (the "Deed of Trust"), dated as July 30, 2013, executed by the Borrower for the benefit of the Lender, which granted liens on and security interests in *inter alia*, the Debtor's leasehold interest in the Property, the leases and rents from the Property and all of the Borrowers' personal property, and general intangibles including without limitation accounts (collectively, the "Personal Property"), and the proceeds thereof.

H.       The Deed of Trust was recorded in the Harris County Clerk's office (the "Official Records") on July 26, 2013 as Document No. 20130375701.

I.       Pursuant to, *inter alia*, the Deed of Trust, the Secured Noteholder has a duly perfected first priority security interest in all of the Debtors' assets, including the Debtors' leasehold interest in the Property, the rents and profits from the Property and the Personal Property, and the proceeds thereof (collectively, the "Pre-Petition Collateral").

J.       Specifically, Sections 1.1(g) of the Deed of Trust provides that the Debtor granted and/or created in favor of and for the benefit of the Original Lender a security interest in:

> Rents.  All rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, receivables, receipts,

516952.000434 24039712.1

revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other consideration of whatever form or nature received by or paid to or for the account of or benefit of Borrower or its agents or employees from any and all sources arising from or attributable to the Property, and proceeds, if any, from business interruption or other loss of income or insurance, including, without limitation, all hotel receipts, revenues and credit card receipts collected from guest rooms, restaurants, bars, meeting rooms, banquet rooms and recreational facilities, all receivables, customer obligations, installment payment obligations and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of property or rendering of services by Borrower or any operator or manager of the hotel or the commercial space located in the Improvements or acquired from others (including, without limitation, from the rental of any office space, retail space, guest rooms or other space, halls, stores, and offices, and deposits securing reservations of such space), license, lease, sublease and concession fees and rentals, health club membership fees, food and beverage wholesale and retail sales, service charges, vending machine sales and proceeds, if any, from business interruption or other loss of income insurance.

K.     Section 1.2 of the Deed of Trust provides, in part:

<u>Assignment of Rents</u>.  Borrower hereby absolutely and unconditionally assigns to Lender and Trustee all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Nevertheless, subject to the terms of the Loan Agreement and Section 8.1(h) of this Security Instrument, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents and Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

L.     The Note, Deed of Trust, Loan Agreement, and all other agreements and documents evidencing the Loan and containing the obligations of the Debtor under the Loan are hereafter referred to as the "Loan Documents."

M.     On or about August 6, 2013, the Original Lender assigned, among other things, the Note and Deed of Trust, to the Secured Noteholder pursuant to among other things, an allonge and Assignment of Leasehold Deed of Trust, Assignment of Leases and Rents and Security Agreement, which was recorded in the Official Records on September 24, 2013 as Document Number

20130488527.

N.      The Secured Noteholder is the current owner and holder of the Note and beneficiary under the Deed of Trust, and all other Loan Documents.

O.      As of the Petition Date, the total indebtedness due under the Loan is at least $2,533,542.38, calculated as follows:

| | |
|---|---|
| Principal Balance | $2,453,891.27 |
| Interest | $65,636.48 |
| UCC Filing | $114.63 |
| Appraisal Fee | $5,000.00 |
| Legal Fees | $8,500.00 |
| Payoff Processing Fee | $400.00 |
| TOTAL | $2,533,542.38 |

In addition, Secured Noteholder has asserted its indebtedness includes Default Interest in the amount of $41,988.80, Late Fees in the amount of $9,968.54, a Liquidation Fee in the amount of $28,065.98, a Special Servicing Fee in the amount of $1,589.21, Interest on Advances in the amount of $1,336.31 and a Yield Maintenance Calculation in the amount of $273,342.00 (the "Disputed Amounts). The Debtor and Secured Noteholder reserve the issue of allowability of such fees for determination by the Court to a later date, if necessary. The Debtor acknowledges and admits that the indebtedness under the Note in the amount of at least $2,533,542.38 (the Pre-Petition Indebtedness") constitutes valid and binding obligations of the Debtor. Further, the Debtor acknowledges and admits that the Secured Noteholder holds deeds valid and duly perfected security interests in, the Pre-Petition Collateral. (The liens and security interests of the Secured Creditor in the Pre-Petition Collateral are referred to collectively as the "Pre-Petition Liens")

P.      The Debtor acknowledges and admits the Pre-Petition Liens constitute valid, binding, enforceable and perfected liens. The Debtor further acknowledges and admits that the Pre-Petition Liens have priority over and are superior to all other mortgages, deeds of trust, pledges, liens, and/or security interests in the Pre-Petition Collateral (including without limitation the Cash Collateral (as defined below)) of any kind or nature, except for any ad valorem tax liens

securing amounts owed to state governmental units for unpaid ad valorem taxes.

Q.      The Debtor further acknowledges and admits that all cash of the Debtor's bankruptcy estate and cash equivalents, which represent income, payables, proceeds, products, rents, or profits of the Property and Pre-Petition Collateral wherever located, that are now in the Debtor's possession, custody, or control, or in which the Debtor will obtain an interest during the pendency of the above-captured Bankruptcy Case constitute cash collateral (collectively, the "Cash Collateral").

R.      Prior to the Petition Date, the Debtor breached the Loan by not making the required monthly payments under the Lien for April, May, June, July and August.

S.      The Debtor is indebted to the Small Business Administration ("SBA") pursuant to Note dated May 17, 2020 in the original principal amount of $150,000.00 and secured by a lien on the following property of the Debtor:

> All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

T.      The Secured Noteholder and SBA are hereafter collectively referred to as the "Secured Parties."

U.      The Debtor shall account to the Secured Parties for all Cash Collateral that:  (i) it now possesses; (ii) it has permitted to be transferred into the possession of others, if any; (iii) is being held by those in privity with the Debtor; or (iv) the Debtor might hereafter obtain.  Unless already done, the Debtor shall account to the Secured Parties for the receipt and use, if any, of Cash Collateral received by the Debtor since the Petition Date, including without limitation by providing monthly operating reports and financial statements or the official monthly operating

reports filed with the Court.

   V.  The Debtor does not have sufficient available sources of working capital and financing to carry on the operation of its business without the use of Cash Collateral.  The Debtor acknowledges and agrees that all of the Debtor's assets are subject to the Pre-Petition Liens.

   W.  The Debtor must provide adequate protection to the Secured Parties as set forth in this Order for the use of the Pre-Petition Collateral and Cash Collateral, and the Secured Noteholder is entitled, pursuant to Sections 361, 362(d), and 363 of the Bankruptcy Code, to adequate protection for the Debtor's use of the Pre-Petition Collateral and Cash Collateral and to protect against the diminution, if any, of the Secured Noteholder's interest in the Pre-Petition Collateral, the Cash Collateral and any proceeds therefrom resulting from the use, sale, or lease thereof.

   **NOW THEREFORE**, it is hereby ORDERED as follows:

**AGREEMENT**

   1.  The Recitals set forth above are hereby incorporated into this Order.

   2.  The Secured Parties consent to the Debtor's use of Cash Collateral during the period ("Budget Period") beginning on the date of entry of this Order and ending on the Termination Date (as defined below) solely and exclusively for the disbursements set forth in the budget attached hereto as Exhibit "A," (the "Budget") and solely and exclusively upon the protections, terms and conditions provided for in this Order, and for no other purpose.  Notwithstanding anything to contrary contained herein, Debtor shall not use cash collateral to make any payment or distribution to any insider or affiliate of the Debtor.  Further, and in strict accordance with the Budget, the Debtor may not under any circumstance use the Cash Collateral to pay any prepetition claim or debt of any party other than that of the Secured Parties or transfer the Cash Collateral to any affiliate or insider of the Debtor.

   3.  The Debtor is authorized to use Cash Collateral during the Budget Period exclusively for the purposes of and to the extent described in the Budget and this Order.  The Debtor may not exceed the total expenses set forth in the Budget for the Budget Period by more

6

than ten percent (10%) on a cumulative basis and, furthermore, the expenditure for any particular line item described in the Budget shall, with respect to each calendar month during the Budget Period, not exceed 115% of the aggregate amount projected to be expended by the Budget on such line item.

4.      The Debtor shall not use, sell, or expend, directly or indirectly, the Prepetition Collateral, the Post-Petition Collateral (as defined below) or the Cash Collateral except upon the terms and conditions set forth in this Order.  The consent of the Secured Parties to the use of the Cash Collateral pursuant to this Order shall not be deemed to be consent to any further or other use of the Prepetition Collateral, the Post-Petition Collateral or Cash Collateral other than such use as may be expressly set forth in this Order.

5.      Notwithstanding anything contained in this Order or in the Budget, the Debtor shall not use Cash Collateral for capital expenditures without first obtaining the Secured Parties' prior written consent or further Order of the Court on notice to the Secured Parties.

6.      The Debtor shall not enter into any leases or material contracts without first obtaining the Secured Parties prior written consent or Bankruptcy Court Order. A material contract means any contract which would require the expenditure of in excess of $10,000.00 over the term of the contract.

7.      The Secured Noteholder is entitled to adequate protection of its interests in the Pre-Petition Collateral and the Cash Collateral under Bankruptcy Code § 363(e), solely to the extent of any diminution in value of the Pre-Petition Collateral and Cash Collateral during the period from the Petition Date through the Termination Date.  As adequate protection of the Secured Parties' interests, and in addition to all existing security interests and liens granted to or for the benefit of Secured Party in the Prepetition Collateral (including the Cash Collateral), the Secured Parties are hereby granted, to secure their prepetition debt, replacement security interests and liens (the "Replacement Liens" or "Post-Petition Liens") on all the Debtor's (and its bankruptcy estate's) assets and property whether now owned or hereafter created or acquired, real or personal, assets or rights, of any kind or nature, wherever located, and the income, receivables, charges, proceeds,

7

products, rents and profits thereof, including, without limitation, all cash, accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, instruments, insurance proceeds, investment property, letters of credit rights, goods, licenses, causes of action, rights to payment including tax refund claims, insurance proceeds and tort claims and the proceeds, products, rents and profits of all of the foregoing, excluding the Vehicles to the extent that the Secured Noteholder does not have a security interest in them) whether arising from Bankruptcy Code § 552(b) or otherwise; *provided, however*, that any existing retainers held by estate professionals on the Petition Date shall only be subject to the Replacement Liens to the extent they are not fully utilized by such estate professionals for payment of fees and costs approved by this Court pursuant to 11 U.S.C. § 330 (the "Post-Petition Collateral"). Such Replacement Liens include, without limitation, liens on all cash, including the Cash Collateral generated or received by the Debtor subsequent to the Petition Date. The Replacement Liens are deemed valid, binding, enforceable and perfected upon entry of this Order and no further notice, filing, recording or order shall be required to validate or perfect the Replacement Liens. The Replacement Liens shall attach in the same order of priority that existed under applicable non-bankruptcy law as of the Petition Date. The Collateral (as hereafter defined) shall not be subject to section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code. (The Pre-Petition Collateral, Post-Petition Collateral and Cash Collateral are hereafter collectively referred to as the "Collateral"). Notwithstanding, the Replacement Liens do not extend to the Debtor's transfer or lien avoidance rights and claims under Sections 544, 545, 547, or 548 of the Code or funds received from same.

8.      On the first day of the month, the Secured Noteholder is authorized to deduct from the Excess Cash Reserve Account as defined in the Loan Agreement held by Secured Noteholder $11,914 with respect to Debtor's tax reserve under the Loan Documents, and $2,082 with respect to Debtor's insurance reserve under the Loan Documents.

9.      As additional adequate protection, if and to the extent that the Replacement Liens prove insufficient to adequately protect the interests of Secured Parties in the Collateral (as defined below), then Secured Parties shall have a super-priority administrative claim against the Debtor

under Bankruptcy Code § 507(b) (the "Superpriority Claim").  The Superpriority Claim shall constitute and shall be, pursuant to Bankruptcy Code § 364(c)(1), a claim in the Bankruptcy Case with priority over any and all administrative expenses of the kinds specified in Section 503(b) or 507(b) of the Bankruptcy Code and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), or 726 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment; *provided, however*, that: (i) the Superpriority Claim shall be subordinate to any allowed administrative claim held by counsel for the Debtor in this Chapter 11 case; and (ii)  the Secured Noteholder's Superpriority Claim shall be senior in priority to the SBA's Superpriority Claim.

10.     The Debtor shall maintain, with financially sound and reputable insurance companies, insurance covering the Collateral, which insurance shall be issued by companies, associations or organizations reasonably satisfactory to Secured Noteholder and shall cover such casualties, risks, perils, liabilities and other hazards reasonably required by Secured Noteholder and the Loan Documents.  The amount and terms of such insurance shall comply with the obligations of the Debtor under the Loan Documents.  The Secured Noteholder shall be named as an additional insured and loss payee on all such insurance policies obtained by Debtor.

11.     As part of its adequate protection obligations, the Debtor shall also provide the Secured Parties, upon written reasonable request therefor, but not less frequently than monthly, all balance sheets, income statements, records of funds received in connection with the Collateral, and other standard financial statements.  The Debtor shall provide the Secured Parties with all other reports and information concerning the Debtor's business, financial or otherwise, as the Secured Parties may from time to time request, including without limitation and on at least a monthly basis, any summaries of operations generated by the Debtor in the ordinary course of their business, including monthly accounts payable and accounts receivable reports.

12.     Nothing in this Order shall prejudice or limit the Secured Parties' rights to file, pursue, and/or oppose any motion or other relief in this Case, including but not limited to the

following: (i) the right to oppose any further use of Cash Collateral by the Debtor following the Termination Date, (ii) the right to file and/or pursue, a motion for relief from the automatic stay under Bankruptcy Code § 362(d), and/or a motion for further additional and/or different adequate protection, (iii) the right to seek appointment of a trustee under Bankruptcy Code § 1104 or seek dismissal or conversion of this Bankruptcy Case on any ground, including that the Case was filed in bad faith and/or (iv) the right to request any other relief. Nothing in this Agreed Order shall constitute a finding by the Court or an admission by the Secured Noteholder that its interests in its Collateral, including cash collateral, are adequately protected.

13.     Notwithstanding anything to the contrary contained in this Order, no Cash Collateral, Pre-Petition Collateral or Post-Petition Collateral may be used by the Debtor: (i) to object, contest, or raise any defense to the validity, perfection, priority, extent, enforceability under the Loan Documents, the Pre-Petition Collateral, the Post-Petition Collateral, any guaranty, or the adequate protection granted to Secured Parties, (ii) to assert any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests, or defenses against the Secured Parties or their agents, affiliates, representatives, attorneys, or advisors, (iii) to prevent, hinder, or otherwise delay Secured Parties' assertion, enforcement, or realization on the Cash Collateral, the Pre-Petition Collateral or Post-Petition Collateral in accordance with the Loan Documents and this Order, (iv) to seek to modify, without Secured Parties' consent, any of the rights granted to Secured Parties hereunder or under the Loan Documents, or (v) to pay compensation to, or reimburse any expenses incurred by, any professional employed or retained by the Debtor in the Case.

14.     The Post-Petition Liens shall be subject to any amounts payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court.

15.     Notwithstanding anything to the contrary stated herein, the Debtor's right to use Cash Collateral under this Order shall terminate on the earlier to occur of the following: (a) an Event of Default under this Order, (b) an order of the Court terminating the use of the Cash Collateral; or (c) December 31, 2020 at 5:00 p.m. (Central Time) (the "Termination Date"). The

Debtor's right to use Cash Collateral under this Order may be extended beyond the Termination Date with the written consent of the Secured Parties and without a Court hearing or further order of this Court.  All provisions of this Order shall apply to any such further usage of the Cash Collateral.  If the Debtor and the Secured Creditor are unable to reach an agreement regarding an extended term, then the Debtor's right to use Cash Collateral shall cease on the Termination Date, pending further order of this Court.

16.     The occurrence of any of the following shall constitute an "Event of Default" under this Order:  (i) any violation or breach of any of the terms of this Cash Collateral Order by the Debtor; (ii) conversion of this Bankruptcy Case to one under Chapter 7 of the Bankruptcy Code; (iii) the appointment under Bankruptcy Code § 1104 of a trustee or an examiner, in this Case; (iv) the dismissal of this Case; (v) the lifting of the automatic stay under § 362 of the Bankruptcy Code with respect to the Debtor's interest in the Property; and (vi) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Order without the prior express written consent of the Secured Parties.

17.     Upon the occurrence of any Event of Default, the Secured Parties shall provide written notice to the Debtors and their counsel of the default.  If the default is not cured within five business days of receipt of the notice, the Debtor's authority to use Cash Collateral and any and all obligations of Secured Parties under this Order shall automatically terminate. The terms and provisions of this Order, including the provisions hereof granting liens, shall survive the Termination Date, the entry of any order that may be entered converting this Case to Chapter 7 or dismissing it.  This Order, as well as the priorities granted to any liens, mortgages and security interests or Superpriority Claim under this Order shall continue in this or any superseding case of the Debtor under the Bankruptcy Code.  Such priorities, in payment granted to any such liens, mortgages security interests and Superpriority Claim shall maintain their priority as provided by this Order until the Secured Parties' claims are indefeasibly satisfied in full.

18.     The provisions of this Order shall inure to the benefit of the Debtor, the Debtor's bankruptcy estate and Secured Parties, and they shall bind each of their respective:  (a) successors

and assigns, including any trustees or other fiduciaries hereafter appointed as legal representatives of the Debtor or with respect to any property of the bankruptcy estate, whether under chapter 11 of the Bankruptcy Code, any subsequent chapter 7 case or otherwise; and (b) all creditors of, and interest holders in, the Debtor and any other party-in-interest.

19.     If any provisions of this Order are hereafter modified, vacated, or stayed, such modification, vacation, or stay shall not affect: (a) the validity of any obligation, indebtedness, or liability incurred by the Debtor to the Secured Parties before the effective date of such modification, vacation, or stay; or (b) the validity, enforceability or priority of any security interest, mortgage, lien, priority or other protection authorized or created hereby, including the Post-Petition Liens.  Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtor to the Secured Parties before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Order, and the Secured Parties shall be entitled to all the rights, remedies, Post-Petition Liens, priorities privileges, and benefits granted herein with respect to all such indebtedness, obligations, or liabilities.

20.     The Secured Noteholder is hereby authorized, but not required, to file or record financing statements or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to it hereunder.  Whether Secured Noteholder shall, in its sole discretion, choose to file such financing statements, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interest shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, at the time and on the date of entry of this Order.  A copy of this Order may, in the discretion of the Secured Parties, be filed with or recorded in any filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such copy of this Order for filing and recording.

21.     The automatic stay arising under 11 U.S.C. § 362 is vacated and modified to the extent necessary to permit the Secured Parties and Debtor to implement the provisions of this Order.

22.     This Court retains jurisdiction over all persons and entities, co-extensive with the powers granted to the Bankruptcy Court under the Bankruptcy Code and jurisdictional laws of the United States, to enforce the terms of this Order and adjudicate any and all disputes in connection therewith.

23.     This Order and the Case shall have no effect upon the obligations of any and all guarantors of the Loan.

24.     The Debtor is authorized and directed to perform all acts, take any action, and execute and comply with such other documents, instruments, and agreements, as the Secured Parties may require as evidence, and for the protection, of the Collateral or that may be otherwise necessary to effectuate the terms and conditions of this Order.

25.     Any notices in connection with this the Order shall be made by personal delivery, overnight delivery, or e-mail transmission to:

|  |  |
|---|---|
| If to the Debtor: | Keiv Hospitality, LLC<br>22055 Katy Freeway<br>Katy, Texas 77450 |
| With a Copy to: | Timothy L. Wentworth<br>Okin Adams LLP<br>1113 Vine Street, Suite 240<br>Houston, Texas 77002<br>twentworth@okinadams.com |
| If to the Secured Noteholder: | Cody C. Hilkie<br>Midland Loan Services<br>10851 Mastin, Suite 300<br>Overland Park, KS  66210 |

With a Copy to:           Bruce J. Zabarauskas
                          Thompson & Knight LLP
                          1722 Routh Street, Suite 1500
                          (214) 969-2511
                          bruce.zabarauskas@tklaw.com

If to the SBA:            Small Business Administration
                          Little Rock Commercial Loan Service Center
                          2120 Riverfront Drive
                          Little Rock, AR 72202

With a copy to:           Chad W. Cowan
                          Assistant United States Attorney
                          United States Attorney's Office
                          1000 Louisiana Street, Suite 2300
                          Houston, Texas 77002
                          Chad.cowan@usdoj.gov

Notices required under this Order shall be effective on personal delivery, delivery by overnight

delivery service, or transmission by e-mail.

Signed: September 16, 2020

_____
Jeffrey P. Norman
United States Bankruptcy Judge

Agreed to:

**OKIN ADAMS LLP**

By: /s/ Timothy L. Wentworth
Timothy L. Wentworth
Texas Bar No. 21179000
twentworth@okinadams.com
1113 Vine Street, Suite 240
Houston, Texas 77002
Tel. (713) 228-4100
Fax. (888) 865-2118
**PROPOSED ATTORNEYS FOR THE
DEBTOR**

**THOMPSON & KNIGHT LLP**

By:   /s/ Bruce J. Zabarauskas
Bruce J. Zabarauskas
Texas Bar No. 24095654
bruce.zabarauskas@tklaw.com
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Tel. (214) 969-2511
Fax. (214) 880-3105
**ATTORNEYS FOR THE SECURED
NOTEHOLDER**

**RYAN K. PATRICK, United States Attorney**

By: /s/ Chad W. Cowan
Chad W. Cowan
Assistant United States Attorney
Attorney-in-Charge
United States Attorney's Office
Southern District of Texas
Texas Bar. No. 24082540
Chad.cowan@usdoj.gov
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
Tel. (713) 567-9569
Fax,: (713) 718-3303
**ATTORNEY FOR THE UNITED STATES OF AMERICA**

516952.000434 24039712.1

KEIV HOSPITALITY LLC
OPERATING BUDGET FOR SEPTEMBER - DECEMBER

| Column1 | Column2 | Column3 | Column4 | Column5 |
|---|---|---|---|---|
| | 9/1/2020-9/30/2020 | 10/1/2020-10/31/2020 | 11/1/2020-11/30/2020 | 12/1/2020-12/31/2020 |
| | | | | |
| ROOM SALES | $60,000.00 | $62,000.00 | $63,000.00 | $59,000.00 |
| | | | | |
| RECURRING EXPENSES | | | | |
| FRANCHISE FEE/ROYALTIES/COMMISSION HILTO | $8,000.00 | $8,100.00 | $8,200.00 | $7,950.00 |
| ELECTRICITY | $4,600.00 | $4,600.00 | $4,600.00 | $4,500.00 |
| WCH/GARBAGE | $240.00 | $240.00 | $240.00 | $240.00 |
| TELEPHONE | $1,100.00 | $1,100.00 | $1,100.00 | $1,100.00 |
| FOOD | $2,000.00 | $2,000.00 | $2,000.00 | $1,450.00 |
| EXECUTIVE PAYROLL | $0.00 | $0.00 | $0.00 | $0.00 |
| REGULAR EMPLOYEE | $24,000.00 | $24,000.00 | $24,000.00 | $23,000.00 |
| TV/CABLE | $850.00 | $850.00 | $850.00 | $850.00 |
| WATER | $960.00 | $960.00 | $960.00 | $960.00 |
| GAS/PROPANE | $250.00 | $250.00 | $250.00 | $250.00 |
| HEALTH INSURANCE | $1,659.00 | $1,659.00 | $1,659.00 | $1,659.00 |
| MAINTENANCE/MATERIAL | $2,800.00 | $2,800.00 | $2,800.00 | $2,400.00 |
| SUPPLIES | $2,651.00 | $2,200.00 | $2,200.00 | $2,050.00 |
| INSURANCE/WORKER COMPENSATION | $1,652.00 | $1,652.00 | $1,652.00 | $1,652.00 |
| OFFICE EXPENSE | $620.00 | $620.00 | $620.00 | $620.00 |
| INTERNET/SUPPORT | $540.00 | $540.00 | $540.00 | $540.00 |
| LAUNDRY/CHEMICAL | $1,300.00 | $1,300.00 | $1,300.00 | $1,300.00 |
| ADMINISTRATIVE EXPENSE | $300.00 | $191.00 | $191.00 | $200.00 |
| LEGAL | $0.00 | $0.00 | $0.00 | $0.00 |
| ACCOUNTING | $0.00 | $560.00 | $560.00 | $560.00 |
| US TRUSTEE | $550.00 | $550.00 | $550.00 | $550.00 |
| CREDIT CARD FEES | $1,860.00 | $1,880.00 | $1,900.00 | $1,840.00 |
| | | | | |
| | | | | |
| TOTAL EXPENSE | $55,932.00 | $56,052.00 | $56,172.00 | $53,671.00 |
| NET INCOME | $4,068.00 | $5,948.00 | $6,828.00 | $5,329.00 |