**bIN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 20-34408 |
| | § | |
| KEIV HOSPITALITY, LLC, ET AL., | § | CHAPTER 11 |
| | § | |
| DEBTOR | § | JOINTLY ADMINISTERED |

## DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF REORGANIZATION

THIS DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE CHAPTER 11 PLAN OF REORGANIZATION OF KEIV HOSPITALITY, LLC, DATED AS OF JANUARY 15, 2021 (AS AMENDED FROM TIME TO TIME, THE "PLAN").

ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS THAT ARE ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THE ENTIRE DISCLOSURE STATEMENT FURNISHED TO THEM AND THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT PRIOR TO SUBMITTING A BALLOT. THE DESCRIPTION OF THE PLAN CONTAINED IN THIS DISCLOSURE STATEMENT IS INTENDED AS A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN ITSELF.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS DISCLOSURE STATEMENT AND IN THE PLAN CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, CERTAIN PROJECTIONS FOR THE FUTURE OPERATIONS OF THE DEBTOR, TRANSACTIONS TO WHICH EITHER DEBTOR WAS OR IS A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTOR AND NOT TO ANY OTHER PARTY. NONE OF THE ATTORNEYS, ACCOUNTANTS, OR OTHER PROFESSIONALS RETAINED BY THE DEBTOR MAKE ANY REPRESENTATIONS CONCERNING SUCH INFORMATION.

UNLESS OTHERWISE DEFINED HEREIN, ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT HAVE THE MEANINGS ASCRIBED TO THEM IN THE PLAN. ANY TERM USED IN THE PLAN OR HEREIN THAT IS NOT DEFINED IN THE PLAN OR HEREIN AND THAT IS USED IN THE BANKRUPTCY CODE OR THE BANKRUPTCY RULES HAS THE MEANING ASSIGNED TO THAT TERM IN THE BANKRUPTCY CODE OR THE BANKRUPTCY RULES, AS THE CASE MAY BE. IF THERE IS ANY CONFLICT BETWEEN THE DEFINITIONS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE DEFINITIONS CONTAINED IN THE PLAN, THE DEFINITIONS CONTAINED IN THE PLAN SHALL CONTROL.

**DISCLOSURE STATEMENT**
**PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE**

## I.      INTRODUCTION

Keiv Hospitality, LLC, as Debtor and Debtor-in-Possession in the Chapter 11 Case, has filed with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), its Plan dated as of January 15, 2021.  This Disclosure Statement is submitted pursuant to section 1125 of the Bankruptcy Code in connection with the solicitation of votes on the Plan from Holders of Impaired Claims against, and Impaired Equity Interests in, the Debtor.

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with section 1125(b) of the Bankruptcy Code as containing information of a kind and in sufficient detail adequate to enable a hypothetical reasonable investor typical of Holders of Claims and Equity Interests in Impaired Classes, if any, to make an informed judgment whether to accept or reject the Plan.  Such approval of this Disclosure Statement by the Bankruptcy Court and the transmittal of this Disclosure Statement do not, however, constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan and should not be interpreted as being a recommendation by the Bankruptcy Court either to accept or reject the Plan.

Accompanying or included as exhibits to this Disclosure Statement are copies of the following documents:

1.      The Plan, including any exhibits thereto (except as otherwise expressly provided in the Plan), included as Exhibit 1 to this Disclosure Statement;

2.      Ballot for Accepting or Rejecting Plan included as Exhibit 2 to this Disclosure Statement.

3.      The Debtor's projections of income, expenditures and plan payments through the life of the Plan, included as Exhibit 3.

## II.      PURPOSE OF THIS DISCLOSURE STATEMENT

The purpose of this Disclosure Statement is to provide the Holders of Claims and Equity Interests entitled to vote on the Plan with adequate information to make an informed judgment about the Plan.  This information includes, among other things, (a) a summary of the Plan and an explanation of how the Plan will function, including the means of implementing and funding the Plan, (b) general information about the business, property, and operations of the Debtor, (c) the events leading to the filing of the Chapter 11 Case, (d) a liquidation analysis for the Debtor, and (e) a summary of significant events which have occurred to date in the Chapter 11 Case.

This Disclosure Statement contains important information about the Plan and considerations pertinent for Confirmation of the Plan.  All Holders of Claims and Equity Interests are encouraged to review carefully this Disclosure Statement.

IN THE OPINION OF THE DEBTOR, THE TREATMENT OF CLAIMS UNDER THE PLAN CONTEMPLATES AN EQUAL OR GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER A LIQUIDATION OF THE DEBTOR. ACCORDINGLY, THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS.

## III.    VOTING AND CONFIRMATION

**A.    <u>Who May Vote</u>**

Only the Holders of Claims and Equity Interests which are "Impaired" under the terms and provisions of the Plan are permitted to vote to accept or reject the Plan.  For purposes of the Plan, only the Holders of Claims and Equity Interests in Classes 1, and 4 (the "Voting Classes") are Impaired under the Plan and thus may vote to accept or reject the Plan.  **Accordingly, a ballot for acceptance or rejection of the Plan (a "Ballot") is only being provided to members of the Voting Classes.**

**B.    <u>How to Vote</u>**

Each Holder of a Claim in a Voting Class should read this Disclosure Statement, together with the Plan and any exhibits thereto, in their entirety.  After carefully reviewing the Plan and this Disclosure Statement and any exhibits thereto, please complete the enclosed Ballot, including marking your vote with respect to the Plan, and return it as provided below.  If you have an Impaired Claim in more than one Class, you should receive a separate Ballot for each such Claim. If you receive more than one Ballot, you should assume that each Ballot is for a separate Impaired Claim and you should complete and return all of them.

If you are a member of a Voting Class and did not receive a Ballot, if your Ballot is damaged or lost, or if you have any questions concerning voting procedures, please contact Timothy Wentworth, counsel to the Debtor, by telephone at (713) 228-4100 or by electronic mail at twentworth@okinadams.com.

Persons or Entities receiving a Ballot should complete and sign each enclosed Ballot and return it to the address provided below. **In order to be counted, Ballots must be duly completed, executed and received no later than _____, 2021 (the "Voting Deadline").**  All Ballots should be returned either by regular mail, hand delivery, overnight delivery, or email to:

OKIN ADAMS LLP
Attn: Timothy Wentworth
1113 Vine Street, Suite 240
Houston, Texas  77002
twentworth@okinadams.com

**C.      Acceptance of Plan and Votes Required for Class Acceptance**

As the Holder of a Claim in a Voting Class, your vote on the Plan is extremely important. The Debtor is only soliciting acceptances of the Plan from Holders of Claims in Voting Classes. You may be contacted by the Debtor or its representatives with regard to your vote on the Plan.

Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if:

(i)      the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan; and

(ii)     the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan.

To meet the requirement for Confirmation of the Plan under the "cram-down" provisions of the Bankruptcy Code with respect to any Impaired Class of Claims which votes to reject, or is deemed to have rejected the Plan (a "Rejecting Class"), the Debtor would have to show that all Classes junior to the Rejecting Class will not receive or retain any property under the Plan unless all Holders of Claims in the Rejecting Class receive or retain under the Plan property having a value equal to the full amount of their Allowed Claims.  For a more complete description of the implementation of the "cram-down" provisions of the Bankruptcy Code pursuant to the Plan, see "VOTING ON AND CONFIRMATION OF THE PLAN -- Confirmation Without Acceptance by All Impaired Classes" in Section IX.

**D.      Confirmation Hearing and Objections to Confirmation**

The Bankruptcy Court has scheduled a Confirmation Hearing to consider Confirmation of the Plan for _____ 2021 at _____ (prevailing Central Time), at the courtroom of the Honorable Jeffrey Norman, in the United States Bankruptcy Court for Southern District of Texas, Houston Division, located at Bob Casey United States Courthouse, Courtroom No. 403, Houston, Texas 77002, which may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.  Any objection to Confirmation of the Plan must be filed and served in accordance with the Bankruptcy Rules and Bankruptcy Local Rules for the Southern District of Texas no later than _____.

## IV.      OVERVIEW OF THE DEBTOR'S BUSINESS

The Debtor is a Texas limited liability company formed on April 4, 2013 for the purpose of developing, owning and operating a Hampton Inn and Suites hotel located at 22055 Katy

Freeway, Katy, Harris County, Texas (the "Debtor"). The Debtor operates under a franchise agreement with Hilton Worldwide and has 69 guest rooms and 1100 square feet of meeting space.

The Debtor is owned by Ben Mousavi (50%), Riba Mousavi (25%), Kevin Mousavi (24%) and Mousavi Hospitality, Inc. (1%).

Deutsche Bank Trust Company, as Trustee for the Benefit of the Registered Holders of Morgan Stanley Bank of America Merrill Lynch Trust 2013-C11, Commercial Mortgage Pass-Through Certificates, Series 2013-C11 ("Deutsche Bank") is the Debtor's senior secured creditor, with liens on substantially all of the Debtor's assets, including all real and most personal property. In addition, on the petition date Deutsche Bank held reserve funds in the approximate amount of $318,000.00, earmarked for taxes, insurance, repairs and improvements that additionally serve as collateral for the loan.

As of the Petition Date, the total outstanding debt owed to Deutsche Bank was in excess of $2.5 million.

Additionally, the Debtor is indebted to the US Small Business Administration ("SBA") in the amount of $151,618.15 for a disaster loan obtained as a result of the COVID-19 pandemic. The SBA holds a second lien behind Deutsche Bank on the Debtor's personal property.

Based upon the Debtor's estimated value of the hotel and personal property of approximately $6.3 million, the Debtor believes Deutsche Bank and the SBA are fully secured.

## V.     EVENTS LEADING TO BANKRUPTCY

Historically, the Debtor has been successful in its business operations. In 2018 and 2019 the Debtor reported gross revenues in the amounts of approximately $1.6 million and $1.5 million respectively. However, in 2020 the Debtor's revenues dropped precipitously to approximately $430,000.00 through the petition date ($645,000.00 annualized) due almost exclusively to the worldwide economic downturn resulting from the COVID-19 pandemic. The Debtor maintained all payments to Deutsche Bank current until the impact of the pandemic negatively affected occupancy rates. As a result, the Debtor was unable to pay amounts due to Deutsche Bank for March 2020 and subsequent months. Deutsche Bank subsequently declared the loan in default. Despite the Debtor's efforts, it was unable to reach an agreement with Deutsche Bank to forestall a foreclosure.

Despite poor revenues since inception of the pandemic, the Debtor was able to maintain its payments for payroll and to vendors. As a result, the Debtor had little unsecured debt on the Petition Date other than past-due franchise payments to Hilton Worldwide and an unsecured loan with Guaranty Bank & Trust in the amount of $60,934.48.

In an effort to stave off the foreclosure of the Debtor's material assets, on September 1, 2020, the Debtor filed its voluntary petition for relief (the "Bankruptcy Case") under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

## VI.    SIGNIFICANT EVENTS IN THE BANKRUPTCY CASE

### A.    Introduction

On the Petition Date, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.  The Chapter 11 Case was assigned case number 20-34408 and is currently pending in front of the Honorable Jeff Norman.  In addition, Ben Mousavi owns and operates a Hilton Garden Inn hotel located at 2409 Texmati, Dr., Katy, Harris County, Texas that operates under the corporate name Keivans Hospitality, Inc. (the "Hilton").  The Hilton filed its own Chapter 11 bankruptcy petition on September 1, 2020 [Docket No. 9], and the cases were jointly administered by Order entered on September 3, 2020 [Docket No. 21].

The Debtor remains in possession of its property and continues to manage its assets as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  A brief summary of significant matters or events that have occurred to date in the Bankruptcy Case is set forth below.  The description of such matters or events is qualified in its entirety by the actual pleadings filed in the Chapter 11 case and, to the extent of any inconsistencies between the descriptions in this Disclosure Statement and such pleadings, such pleadings shall control.  All such pleadings are on file with, and may be obtained from, the Bankruptcy Court.

### B.    Debtor in Possession Financing and Cash Collateral

On September 1, 2020, the Debtors filed each their *Emergency Motion for Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (II) Granting Adequate Protection for the Use Thereof; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 As to the Use of Cash Collateral* [Docket No. 6], which requested approval of the Debtor's use of cash collateral in the form of credit card receipts.

On September 3, 2020, the Bankruptcy Court approved an agreement between the Debtor and Deutsche Bank and entered its *Interim Order Authorizing Use of Cash Collateral and Setting Final Hearing* [Docket No. 22].

On September 16, 2020, the Bankruptcy Court entered its *Agreed Final Order Authorizing Kiev Hospitality, LLC's Use of Cash Collateral and Granting Inter Alia, Replacement Liens as Adequate Protection to Secured Noteholder* [Docket No. 49], which approved the Debtor's continuing use of cash collateral through December 31, 2020.

### C.    Schedules and Statements of Financial Affairs

The Debtor filed its Schedules and Statement of Financial Affairs with the Bankruptcy Court on September 14, 2020.  [Docket No. 40].

### D.    Small Business Designation

This case was initially filed as a Subchapter "V" small business case.  The Debtor filed its *Motion to Terminate "Subchapter V" Designation of Keiv Hospitality, LLC* on September 10,

- 6 -

2020 [Docket No. 35] due to concerns regarding the Subchapter "V" debt limit when combined with liabilities of the Hilton.  The Bankruptcy Court entered the *Order Granting Debtor's Motion to Terminate "Subchapter V" Designation of Keiv Hospitality, LLC* on October 6, 2020 [Docket No. 56].

**E.      Section 341 Meeting of Creditors**

The meeting of creditors pursuant to Section 341 of the Bankruptcy Code occurred on September 29, 2020.  [Docket No. 11].

**F.      Retention of Professionals by the Debtors**

The Debtor retained the law firm of Okin Adams LLP as its general bankruptcy counsel in the Bankruptcy Case.  On October 8, 2020, the Bankruptcy Court entered an *Order Authorizing the Employment and Retention of Okin Adams LLP as Bankruptcy Counsel to the Debtors* [Docket No. 57].

The Debtor retained Moore Tax Services, Inc. as its accountant in the Bankruptcy Case.  On November 9, 2020, the Bankruptcy Court entered an *Order Authorizing the Employment and Retention of Moore Tax Services, Inc. as Accountant for the Debtors* [Docket No. 79].

**G.      Bar Dates**

The *Notice of Chapter 11 Bankruptcy Case* was originally filed on September 2, 2020 [Docket No. 11].  Among other things, the Notice established December 28, 2020 as the deadline for filing Claims against the Debtor by all Holders of such Claims (not including Governmental Units), and March 1, 2021 as the deadline for Filing Claims against the Debtor by all Governmental Units.

The Bankruptcy Court has not yet established a bar date for the Filing of Administrative Claims in the Chapter 11 Case, but it is expected that such bar date will be set forth in order approving this Disclosure Statement or the Confirmation Order.

**H.      Monthly Operating Reports**

The Debtor has timely filed all Monthly Operating Reports to date:

| | |
|---|---|
| September 2020 | Docket No. 76 |
| October 2020 | Docket No. 84 |
| November 2020 | Docket No. 86 |

## VII.   SUMMARY OF THE PLAN

> **THIS ARTICLE VII IS INTENDED ONLY TO PROVIDE A SUMMARY OF THE <u>MATERIAL TERMS</u> OF THE PLAN AND IS QUALIFIED BY REFERENCE TO THE ENTIRE DISCLOSURE STATEMENT AND THE PLAN AND SHOULD <u>NOT</u> BE RELIED ON FOR A COMPREHENSIVE DISCUSSION OF THE PLAN.  TO THE EXTENT THERE ARE ANY INCONSISTENCIES OR CONFLICTS BETWEEN THIS ARTICLE VII AND THE PLAN, THE TERMS AND CONDITIONS SET FORTH IN THE PLAN WILL CONTROL AND GOVERN.**

### A.      <u>Introduction</u>

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a debtor is authorized to reorganize and/or liquidate its business for the benefit of itself and its creditors and equity holders.  The formulation of a plan is the principal objective of a Chapter 11 bankruptcy case.  In general, a Chapter 11 plan: (i) divides claims and equity interests into separate classes; (ii) specifies the property each class is to receive under such plan; and (iii) contains other provisions necessary to the reorganization and/or liquidation of the debtor.  Chapter 11 does not require each holder of a claim or equity interest to vote in favor of the plan in order for the bankruptcy court to confirm the plan.  A plan must be accepted, however, by the holders of at least one impaired class of claims (unless there are no impaired classes) without considering the votes of "insiders" (within the meaning of section 101(31) of the Bankruptcy Code) in that impaired class.

The summary of the Plan contained herein addresses only certain provisions of the Plan.  As a summary, it is qualified in its entirety by reference to the Plan itself (including any schedules and/or exhibits which are referred to therein).  The Plan (including any exhibits and/or schedules thereto) shall control and, upon Confirmation and the Effective Date, bind the Debtor, the Reorganized Debtor, all Holders of Claims and Interests and other parties in interest except as expressly set forth in the Plan.

The Plan documents (*i.e.*, the Plan, any Plan Supplement, and any documents that aid in effectuating the Plan) (the "Plan Documents") will be filed with the Bankruptcy Court as soon as reasonably practicable prior to the Confirmation Hearing, or such other date as may be approved by the Bankruptcy Court (unless already on file with the Bankruptcy Court or attached as exhibits to the Plan or this Disclosure Statement); *provided*, *however*, that the Debtor may amend the Plan Documents through and including the Effective Date.  Upon their filing with the Bankruptcy Court, the Plan Documents may be obtained from: (i) the Clerk's Office during normal business hours; (ii) the Bankruptcy Court's copying service upon the payment of the appropriate charges; or (iii) the Debtor's bankruptcy counsel upon written request.

### B.      <u>General Overview of the Plan</u>

The Debtor has filed the Plan with the Bankruptcy Court.  As more fully set forth in the Plan, the Plan provides for distributions to Holders of Allowed Claims and Interests from cash from the Debtor's operations in the ordinary course.

The Plan shall be implemented on the Effective Date. At the present time, and subject to the negotiation and finalization of the Plan Documents (and all documents relating thereto), the Debtor believes that there will be sufficient funds, as of the Effective Date, to pay in full the expected payments required under the Plan to Holders of Allowed Administrative Claims as more fully set forth in the Plan.

Holders of Claims in Classes 1, 2, 4 and 5 are Impaired under the Plan, and will receive distributions on the Effective Date, or at such other time as the Reorganized Debtor makes distributions in accordance with their respective treatment under the Plan. Specifically, Class 1 (Ad Valorem Tax Claims) shall receive payment of their Allowed Claims over a period of 48 months at twelve percent (12%) interest. Class 2 (Deutsche Bank) shall receive payment of its Allowed Secured Claim plus the Bank Post-Petition Claim as of the Effective Date, amortized over 30 years with a balloon payment due on July 1, 2023 in accordance with the original loan documents. Class 4 (Cure Claim of Hilton Worldwide) shall receive payment of its claim in six equal monthly installments commencing on the first day of the month following 60 days after the Effective Date. Classes 5 (General Unsecured Claims) shall receive monthly payments over 5 years until such obligations are paid in full with interest at three percent (3%) pursuant to terms and conditions as more fully set forth in the Plan.

The Holder of Class 3 Claim (the SBA) shall be paid in in full in accordance with the original loan documents between the Debtor and the SBA. Class 3 is unimpaired.

Holders of Class 6 Claims (Equity) shall retain their interests in the Debtor/Reorganized Debtor.

All parties holding liens shall retain such liens in the priority as they existed on the petition date.

## C.   **Classification of Claims and Interests**

Section 1123 of the Bankruptcy Code provides that a plan of reorganization shall classify the claims of a debtor's creditors and interests of a debtor's equity holders. The Plan divides the Claims and Equity Interests into five (5) Classes. 11 U.S.C. § 1123(a)(1).

Section 101(5) of the Bankruptcy Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured," or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5). The Debtor is required, under section 1122 of the Bankruptcy Code, to classify the Claims and Equity Interests into separate Classes which contain Claims and Equity Interests that are substantially similar to the other Claims and Equity Interests within such Class. 11 U.S.C. § 1122(a).

The Debtor believes that it has classified all Claims and Equity Interests in compliance with the provisions of section 1122 of the Bankruptcy Code. It is possible, however, that a Holder of a Claim or another interested party may challenge the classification of Claims and Equity Interests contained in the Plan and that the Bankruptcy Court may find that a different classification

is required for the Plan to be confirmed.  In such event, it is the present intent of the Debtor, to the extent permitted by the Bankruptcy Court, to make such reasonable modifications of the classifications under the Plan to provide for whatever classification might be required by the Bankruptcy Court for Confirmation and to use the Plan acceptances received in this solicitation for the purpose of obtaining the approval of the Class or Classes of which the accepting Holder is ultimately deemed to be a member.  Any such reclassification could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class for approval of the Plan.  A reclassification of Claims after approval of the Disclosure Statement might necessitate a re-solicitation of acceptances or rejections of the Plan.

**D.    Administrative Claims**

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims including Professional Compensation Claims are not classified for purposes of voting on, or receiving distributions under, the Plan, and the treatment of the Claims is set forth herein.  Holders of Allowed Administrative Claims are not entitled to vote on the Plan.

The Holders of Administrative Claims are entitled to be paid in full under a plan of reorganization pursuant to the Bankruptcy Code. The Debtor believes that the Administrative Claims will consist primarily of fees and costs of Professionals, fees required to be paid to the United States Trustee, the costs of solicitation of votes on the Plan (including photocopying and postage charges), and any Administrative Claims filed with the Bankruptcy Court by the Administrative Claim Bar Date, in each of the foregoing cases as Allowed by a Final Order of the Bankruptcy Court or as otherwise provided in the Plan.

1.    *Administrative Claims*. Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Reorganized Debtor, each Holder of an Allowed Administrative Claim (other than Holders of Professional Compensation Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter; or (ii) if such Administrative claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter.  For the avoidance of doubt, to the extent a Holder of an Administrative Claim is not being paid by the Debtor in the ordinary course, such Holder must file a request for payment of such Administrative Claim by the Administrative Claim Bar Date as set forth below.

Unless previously filed, requests for payment of Administrative Claims must be filed and served on the Reorganized Debtor no later than the Administrative Claim Bar Date.  Objections to such requests must be filed and served on the Reorganized Debtor and the requesting party by twenty-one (21) days after the filing of the applicable request for payment of the Administrative Claims, if applicable.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with a Final Order of

the Bankruptcy Court.

Holders of Administrative Claims that are required to file and serve a request for such payment of such Administrative Claims that do not file and serve such request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claim against the Reorganized Debtor or its property, and such Administrative Claim shall be deemed discharged as of the Effective Date without the need for any objection from the Reorganized Debtor or any action by the Bankruptcy Court.

2.      *Professional Compensation Claims*.

A summary of Professional Compensation Claims is as follows:

| Claimant | Estimated Unpaid Fees and Expenses Through Effective Date |
|---|---|
| Okin Adams LLP – Counsel for the Debtor | |
| The Moore Group – Accountants for the Debtor | |

All requests for payment of Professional Compensation Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than the Administrative Claim Bar Date.  Objections to Professional Compensation Claims must be filed and served on the Reorganized Debtor and the Professional to whose application the objections are addressed no later than the Professional Compensation Claim Objection Deadline.   The Bankruptcy Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and hearing in accordance with the procedures established by the Bankruptcy Court.  Allowed Professional Compensation Claims shall be paid in cash within ten (10) days of the entry of a Final Order allowing such Claim.

3.      *U.S. Trustee Quarterly Fees*. The fees required to be paid to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) for the periods prior to the Effective Date also constitute Administrative Claims.  The Plan provides that all unpaid fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any calendar quarter (or portion thereof) ending prior to the Effective Date shall be paid to the United States Trustee on the Effective Date, or as soon as reasonably practicable thereafter. The Reorganized Debtor shall be responsible for timely payment of the United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6) without the need for the Office of the United States Trustee to file any request for payment.

Following the Effective Date, any fees required to be paid to the United States Trustee, pursuant to 28 U.S.C. §1930(a)(6) shall be paid by the Reorganized Debtor, until the earlier of (i) the closing of the Bankruptcy Case by the issuance of a final decree by the Bankruptcy Court, or (ii) the entry of a Final Order by the Bankruptcy Court dismissing the Bankruptcy Case or converting the Bankruptcy Case to another chapter under the Bankruptcy Code. Any such payment

to the United States Trustee shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant period and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6).

### E.   Summary of Plan Classifications

Set forth below is a summary of each Class of Claims and Equity Interests and the expected Distributions under the Plan to Holders of Allowed Claims against and Allowed Equity Interests in the Debtor.  Estimates of Claims set forth in this Disclosure Statement, if any, are approximate and are based on amounts in the Debtor's schedules and Proofs of Claim timely Filed during the Chapter 11 Case.  Except as otherwise specifically provided in Article III of the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever).

1.   *Ad Valorem Tax Claims*

**Description.**  Class 1 consists of Ad Valorem Tax Claims that are either secured or asserted under Bankruptcy Code section 507(a)(8).

**Treatment.**  Except to the extent that Holders of Allowed Ad Valorem Tax Claims have not already been paid, satisfied or otherwise released prior to the Effective Date or such claimant agrees to a less favorable treatment, each Holder of an Allowed Ad Valorem Tax Claim shall receive, on or after the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of such claim, equal monthly installment payments over 48 months amortized at twelve percent (12%) per annum with the first payment due on the first day of the month following the Effective Date and every month thereafter until paid.

**Voting.**  Class 1 is Impaired under the Plan. Holders of Class 1 Claims are entitled to vote to accept or reject the Plan.

2.   *Allowed Deutsche Bank Secured Claim*

**Description.**  Class 2 consists of the Deutsche Bank Secured Claim pursuant to the Loan Agreement with the Debtor.

**Treatment.**  Class 2 shall consist of the Allowed Secured Claim of Deutsche Bank in the amount of $2,533,542.38 plus the Bank Post-Petition Claim (collectively, the "New Obligation"). The New Obligation shall be amortized in full over 30 years at 5.205% with a single lump-sum balloon payment to be paid on July 1, 2023.  A level payment of such amount, plus Debtor's regular monthly payment of taxes and insurance, shall be due on the first day of the month following the Effective Date and every month thereafter until paid.  If the Debtor has insufficient funds to make its regular monthly payment, Ben Mousavi shall be responsible for payment of any shortfall.  Please refer to the Plan for additional relevant provisions.

**Voting.**  Class 2 is Impaired under the Plan. Holders of Class 2 Claims are entitled to vote

to accept or reject the Plan.

3.      *Allowed Secured Claim of the SBA*

**Description.**   Class 3 consists of the Allowed Secured Claim of the SBA against the Debtor.

**Treatment.**   On or after the Effective Date, and except to the extent that the SBA agrees to a less favorable treatment, the SBA shall receive payments pursuant to loan documents governing the loan.  In accordance with the loan documents, the first payment to the SBA shall be due on June 1, 2021 in the amount of $731.00, with a like payment due each month until principal and interest are paid in full.

**Voting.**   Class 3 is Unimpaired under the Plan.  Holders of Class 3 Claims are not entitled to vote to accept or reject the Plan.

4.      *Allowed Cure Claim of Hilton Worldwide*

**Description.**   Class 4 shall consist of Allowed Cure Claim Claim of Hilton Worldwide.

**Treatment.**   The Class 4 Claim shall be paid over six months in equal monthly installments commencing on the first day of the month following sixty (60) days after the Effective Date.

**Voting.**   Class 4 is Impaired under the Plan. Holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

5.      *Allowed Unsecured Claims*

**Description.**   Class 5 shall consist of Allowed Unsecured Claims existing as of the Petition Date.

**Treatment.**   On or after the Effective Date, and except to the extent that a Holder of an Allowed Unsecured Claim agrees to a less favorable treatment, each Holder of an Allowed Unsecured Claim shall receive payment of its claim in full over a period of sixty (60) months with interest at three percent (3%).

**Voting.**   Class 5 is Impaired under the Plan. Holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

6.      *Prepetition Equity Interests*.

**Description.**   Class 6 shall consist of the Holders of prepetition equity interests in the Debtor, namely, Ben Mousavi as 51% owner, Riba Mousavi as 24% owner, Kevin Mousavi as 23% owner and Mousavi Hospitality, Inc. as 1% owner.

**Treatment.** On the Effective Date, all pre-petition equity interest claims in the Debtor (including all rights and interests that correspond to such equity interest) shall be retained.

**Voting.**  Class 6 is unimpaired under the Plan.  Holders of Class 6 Claims are not entitled to vote to accept or reject the Plan.

**F.**      **Treatment of Executory Contracts and Unexpired Leases**

1.      *Assumption or Rejection of Executory Contracts and Unexpired Leases*.  On the Effective Date, except as otherwise provided in the Plan, all Executory Contracts or Unexpired Leases that currently exist between the Debtor and another Person or Entity, and are not expressly rejected, shall be deemed assumed by the Debtor.  The franchise agreement with Hilton Worldwide shall be assumed.

2.      *Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases*.  The assumption by the Debtor of an Executory Contract or Unexpired Lease shall be binding upon any and all parties to such Executory Contract or Unexpired Lease as a matter of law, and each such assumed Executory Contract or Unexpired Lease shall be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan or an order of the Bankruptcy Court.

3.      *Inclusiveness*.  Unless otherwise specified in the Plan, each Executory Contract and Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease.

4.      *Cure of Defaults*.  Any monetary default under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim amount in cash, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Within twenty-one (21) days after the Effective Date, any counter-party to an Executory Contract or Unexpired Lease being assumed by the Debtor must file a Cure Claim with the Bankruptcy Court asserting all alleged amounts accrued or alleged defaults through the Effective Date.  Any party that fails to file a Cure Claim by this deadline shall be forever barred from asserting, collecting or seeking to collect any amounts or defaults relating thereto against the Reorganized Debtor.  The Reorganized Debtor shall have sixty (60) days from the Effective Date to file an objection to any Cure Claim.  Any disputed Cure Claims shall be resolved either consensually or by the Bankruptcy Court.  Except as may otherwise be agreed to by the parties, by no later than ninety (90) days following the Effective Date, the Reorganized Debtor shall cure all Allowed Cure Claims.  All Disputed Cure Claims shall be cured either within twenty-one (21) days after the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto or as may otherwise be agreed to by the parties.

5.      *Claims under Rejected Executory Contracts and Unexpired Leases*.  Any Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must be incorporated into a Proof of Claim that is filed within twenty-one (21) days after the Effective Date, or in the case of a pending proceeding on the effective date (as referenced immediately above) twenty-one (21) days after the entry of a final non-appealable order therein.  Any rejection Claims not filed within said period shall be deemed barred.  Nothing herein shall extend the

deadline to file a Proof of Claim for rejection of any Executory Contract or Unexpired Lease occurring prior to the Effective Date and which is time barred under the Bankruptcy Code or Bankruptcy Rules prior to the effective date.

6.      *Insurance Policies*.  Except as otherwise provided in the Plan, all of the Debtor's insurance policies are treated as Executory Contracts under the Plan and are expressly assumed by the Debtor.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor may hold against any Person or Entity with respect to such Executory Contracts or Unexpired Leases.

## G.      **Means of Implementation of the Plan**

1.      *General Settlement of Claims*.  Pursuant to sections 1123 and 1124 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, and as a result of arms' length negotiations among the Debtor and its creditors, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan. Confirmation of the Plan also cures defaults under all prepetition contracts paid or maintained pursuant to the Plan, in accordance with section 1124 of the Bankruptcy Code. Notwithstanding anything herein to the contrary, nothing in the Plan shall be construed as the settlement of Claims (or pending Causes of Action related thereto) that have not been Allowed as of the Effective Date and all parties in interest reserve all rights with respect to such Claims and Causes of Action.

2.      *Vesting of Assets in the Reorganized Debtor Free and Clear of Liens and Claims*. Except as otherwise expressly provided in the Plan or the Confirmation Order, or any other agreement entered into in connection with the Plan, pursuant to sections 1123(a)(5), 1123(b)(3), 1141(b) and (c) and other applicable provisions of the Bankruptcy Code, on and after the Effective Date, all property and assets of the Estate of the Debtor, including, without limitation, all claims, rights, warranty agreements and any claims, indemnities or other rights thereunder, continued maintenance obligations and Causes of Action of the Debtor, and any other assets or property acquired by the Debtor or the Reorganized Debtor during the Chapter 11 Case or under or in connection with the Plan, shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, and other encumbrances.  On and after the Effective Date, the Reorganized Debtor may (i) operate its business, (ii) use, acquire, and dispose of its property and (iii) compromise or settle any Claims, in each case without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Plan or the Confirmation Order.

3.      *Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes*.  The Debtor and the Reorganized Debtor, as applicable, may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, without the need for any approvals, authorizations, actions or consents except for those expressly required pursuant hereto.

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant

- 15 -

to the Plan that would otherwise require approval of the managers or members of the Debtor shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the managers or members of the Debtor, or the need for any approvals, authorizations, actions or consents.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement the provisions of and the distributions to be made under the Plan.

## H.     Distributions under the Plan

Subject to Article VII of the Plan, all Distributions under the Plan shall be made by the Reorganized Debtor. Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest), each Holder of an Allowed Claim shall receive the full amount of the Distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class.

## I.     Conditions Precedent to Confirmation of the Plan and the Effective Date

The following are conditions precedent to Confirmation of the Plan and Consummation and occurrence of the Effective Date. Specifically, the Plan shall not be consummated, and the Effective Date shall not occur unless each of the following conditions has been satisfied or waived by the Debtor:

1.     The Plan, including any amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but before the Effective Date, shall be in form and substance acceptable to the Debtor.

2.     The Confirmation Order shall have been entered and become a Final Order in a form and in substance reasonably satisfactory to the Debtor. The Confirmation Order shall provide that, among other things, the Debtor or the Reorganized Debtor, as appropriate, are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including, without limitation, entering into, implementing and consummating the contracts, instruments, releases, leases, and other agreements or documents created in connection with or described in the Plan.

3.     All actions, documents, certificates and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable law.

**J.**      **Discharge from Liability, Release and Injunction Provisions under the Plan**

1.      *Releases under the Plan*.  The Plan proposes to release the Debtor.  The Debtor's release provisions included in the Plan are an integral part of the Debtor's overall restructuring efforts and are an integral element of the Plan.

All Holders of Claims or Interests that vote to accept or are deemed to accept the Plan or will be deemed to have expressly, unconditionally, generally, individually, and collectively released and discharged all Claims and Causes of Action against the Debtor and the Released Parties.

Based on the foregoing, the Debtor believes that the releases in the Plan are necessary and appropriate and meet the requisite legal standard promulgated by the United States Court of Appeals for the Fifth Circuit. Moreover, to the extent requested by the Bankruptcy Court, the Debtor will present evidence at the Confirmation Hearing to demonstrate the basis for and propriety of the release and exculpation provisions.

2.      *Release of Liens and Claims*. To the fullest extent provided under section 1141(c) and other applicable provisions of the Bankruptcy Code, except as otherwise provided herein or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article II, Article V, Article VI, and Article VII, all Liens, Claims, mortgages, deeds of trust, or other security interests against the assets or property of the Debtor or its Estate shall be fully released, canceled, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity.  The filing of the Confirmation Order with any federal, state, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens, Claims and other interests to the extent provided in the immediately preceding sentence.  Any Person or Entity holding such Liens, Claims or interests shall, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtor such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtor.

3.      *Compromise and Settlement*.  Notwithstanding anything contained herein to the contrary, the allowance, classification and treatment of all Allowed Claims and their respective distributions and treatments hereunder, takes into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) and (c) of the Bankruptcy Code or otherwise.  The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (a) in the best interests of the Debtor, its Estate and all Holders of Claims and Equity Interests, (b) fair, equitable and reasonable, (c) made in good faith and (d) approved by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  Entry of the Confirmation Order constitutes approval of the releases by all Entities of all such contractual, legal and equitable subordination rights or Causes of Action that are satisfied, compromised and settled pursuant hereto.

4.      _Release and Discharge of Debtor_.  Pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided for in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtor or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; or (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

5.      _Injunction_.  Except with respect to the obligations arising under the Plan or the Confirmation Order, and except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities that held, hold, or may hold claims or interests that have been released, discharged, or exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor and the Reorganized Debtor: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim, Interest, Cause of Action, or liability or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their Related Parties shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions on account of such Claim or interest, as applicable, hereunder shall be deemed to have consented to the injunction provisions set forth in Section 13.6 of the Plan.

6.  *Conditional Injunction Regarding Actions Against Guarantors*.  All entities that hold claims against any guarantor of an Allowed Claim shall be conditionally enjoined from enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such guarantor on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities provided that the Debtor is not in default of its obligations with respect to such claim pursuant to the applicable provisions of the Plan.

7.  *Term of Certain Injunctions and Automatic Stay*.  Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Bankruptcy Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## K.  **Modification of Plan**

The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rules requirements.

After the entry of the Confirmation Order, the Debtor (prior to the Effective Date) or the Reorganized Debtor (on and after the Effective Date) may modify the Plan to remedy any defect or omission herein, or to reconcile any inconsistencies between the Plan and the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtor or the Reorganized Debtor (as the case may be) obtains Bankruptcy Court approval for such modification, after notice and a hearing, and (b) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims under the Plan.

Further, the Plan may be modified in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements, (b) the Debtor or the Reorganized Debtor (as the case may be) obtains Bankruptcy Court approval for such modification, after notice to the Class of Claims materially adversely affected and a hearing.  Notwithstanding anything to the contrary contained in the Plan, the Plan may not be altered, amended or modified without the written consent of the Debtor (prior to the Effective Date) or the Reorganized Debtor (on and after the Effective Date).

## L.  **Retention of Jurisdiction**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Chapter 11 Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out, as more fully set forth in Article XIII of the Plan.

## VIII.   RISK FACTORS ASSOCIATED WITH THE PLAN

### A.   Certain Bankruptcy Law Considerations

1.   *Parties in Interest May Object to the Debtor's Classification of Claims and Equity Interests.*

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  The Debtor believes that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtor created Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

2.   *The Debtor May Fail to Satisfy the Vote Requirement.*

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtor intends to seek, as promptly as practicable thereafter, confirmation of the Plan. In the event that sufficient votes are not received, the Debtor may seek to accomplish an alternative chapter 11 plan of reorganization. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Plan.

3.   *The Debtor May Not Be Able to Secure Confirmation of the Plan.*

As discussed herein, section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, findings by the bankruptcy court that: (a) such plan does not "unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting holders of claims within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determined that the Disclosure Statement, the balloting procedures and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for confirmation were not met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes.

Section 1129(b)(1) of the Bankruptcy Code provides that, in the event an impaired class does not vote in favor of a plan, but all other requirements of section 1129(a) are satisfied, the

Bankruptcy Court may only confirm such a plan if it "does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan." As described in more detail herein, there can be no assurance, however, that the Bankruptcy Court will find that the Plan satisfies the requirements of section 1129(b)(1) of the Bankruptcy Code.

Confirmation of the Plan is also subject to certain conditions as described in Article XII of the Plan.  If the Plan is not confirmed, it is unclear what distributions, if any, Holders of Allowed Claims and Equity Interests would receive with respect to their Allowed Claims or Equity Interests.

The Debtor, subject to the terms and conditions of the Plan reserves the right to modify the terms and conditions of the Plan as necessary for confirmation.  Any such modifications could result in less favorable treatment of any non-accepting Class, as well as any Classes junior to such non-accepting Class, than the treatment currently provided in the Plan.  Such less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan.

4.      _Non-Consensual Confirmation of the Plan May Be Necessary._

In the event that any impaired class of claims or equity interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm such a plan at the proponents' request if at least one impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. The Debtor believes that the Plan satisfies these requirements and the Debtor may request such non-consensual confirmation in accordance with subsection 1129(b) of the Bankruptcy Code. Nevertheless, in the event that the voting Classes do not accept the Plan, there can be no assurance that the Bankruptcy Court will reach this conclusion.

5.      _The Debtor May Object to the Amount or Classification of a Claim._

Except as otherwise provided in the Plan, the Debtor and Reorganized Debtor reserve the right to object to the amount or classification of any Claim under the Plan.  The information set forth in this Disclosure Statement cannot be relied on by any Holder of a Claim where such Claim is or may become subject to an objection.  Any Holder of a Claim that is or may become subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

6.      _The Effective Date May Not Occur._

The Effective Date is subject to a number of conditions precedent. If such conditions precedent are not met or waived, the Effective Date will not take place. Although the Debtor believes that the Effective Date will occur quickly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will, in fact, occur.

7.      _Contingencies May Affect Votes of the Voting Classes to Accept or Reject the Plan._

The Distributions available to Holders of Allowed Claims and Equity Interests under the Plan can be affected by a variety of contingencies, including, among other things, the total amount of Allowed Claims in certain Classes or whether the Bankruptcy Court orders certain Allowed Claims to be subordinated to other Allowed Claims or Allowed Equity Interests. The occurrence of any and all such contingencies, which could affect distributions available to Holders of Allowed Claims and Equity Interests under the Plan, will not affect the validity of the votes taken by the voting Classes to accept or reject the Plan or require any sort of revote by the Impaired Classes.

8.       *The Debtor Cannot State with Certainty What Recovery Will be Available to Holders of Allowed Claims.*

The estimated Claims and creditor recoveries set forth in this Disclosure Statement are based on various assumptions, and the actual Allowed amounts of Claims may significantly differ from the estimates. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual Allowed amounts of Claims may vary from the estimated amounts contained in this Disclosure Statement. Moreover, the Debtor cannot determine with any certainty at this time the number or amount of Claims that will ultimately be Allowed.   Accordingly, because certain Claims under the Plan will be paid on a pro rata basis, the Debtor cannot state with certainty what recoveries will be available to Holders of Allowed Claims.

B.       **Risks Associated with Forward-Looking Statements**

1.       *The Financial Information Contained Herein Is Based on the Debtor's Books and Records and, Unless Otherwise Stated, No Audit Was Performed.*

The financial information contained in this Disclosure Statement has not been audited. In preparing this Disclosure Statement, the Debtor relied on financial data derived from its books and records that was available at the time of such preparation. Although the Debtor has used its reasonable business judgment to ensure the accuracy of the financial information provided in this Disclosure Statement, and while the Debtor believes that such financial information fairly reflects the financial condition of the Debtor, the Debtor is unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

2.       *Financial Projections and Other Forward-Looking Statements Are Not Assured, Are Subject to Inherent Uncertainty Due to the Numerous Assumptions Upon Which They Are Based and, as a Result, Actual Results May Vary.*

This Disclosure Statement contains various information concerning the financial results of the Reorganized Debtor's operations that are, by their nature, forward-looking, and which projections are necessarily based on certain assumptions and estimates. Should any or all of these assumptions or estimates ultimately prove to be incorrect, the actual future experiences of the Reorganized Debtor may turn out to be different from any financial projections provided herein. Specifically, the projected financial results contained in this Disclosure Statement reflect numerous assumptions concerning the anticipated future performance of the Reorganized Debtor, some of which may not materialize, including, without limitation, assumptions concerning: (a) the timing of confirmation and consummation of the Plan in accordance with its terms; (b) the anticipated future performance of the Reorganized Debtor, including, without limitation, the

Reorganized Debtor's ability to maintain or increase revenue and gross margins, control future operating expenses or make necessary capital expenditures; (c) general business and economic conditions; (d) overall industry performance and trends; (e) the Debtor's and Reorganized Debtor's ability to maintain market strength and receive vendor support by way of favorable commercial terms; and (f) anticipated future commodity prices.

DUE TO THE INHERENT UNCERTAINTIES ASSOCIATED WITH PROJECTING FINANCIAL RESULTS GENERALLY, THE PROJECTIONS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSIDERED ASSURANCES OR GUARANTEES OF THE AMOUNT OF FUNDS OR THE AMOUNT OF CLAIMS THAT MAY BE ALLOWED IN THE VARIOUS CLASSES. WHILE THE DEBTOR BELIEVES THAT ANY FINANCIAL PROJECTIONS CONTAINED IN THIS DISCLOSURE STATEMENT ARE REASONABLE, THERE CAN BE NO ASSURANCE THAT THEY WILL BE REALIZED.

## C.     **Disclosure Statement Disclaimer**

1.     *The Information Contained Herein Is for Soliciting Votes Only.*

The information contained in this Disclosure Statement is for purposes of soliciting votes on the Plan and may not be relied upon for any other purpose.

2.     *This Disclosure Statement Was Not Approved by the Securities and Exchange Commission.*

This Disclosure Statement has not been filed with the SEC or any state regulatory authority. Neither the SEC nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits or the statements contained herein, and any representation to the contrary is unlawful.

3.     *This Disclosure Statement Contains Forward-Looking Statements.*

This Disclosure Statement contains "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward-looking terminology such as "may," "expect," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements. The liquidation analysis, distribution projections and other information contained herein and attached hereto are estimates only, and the timing and amount of actual distributions to Holders of Allowed Claims may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates or recovery projections may or may not turn out to be accurate.

4.     *No Legal or Tax Advice Is Provided to You by this Disclosure Statement.*

This Disclosure Statement is not legal advice to you. The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each Holder of a Claim or an

Equity Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Equity Interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

5.      *No Admissions Are Made by This Disclosure Statement.*

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, any Debtor) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, the Reorganized Debtor, Holders of Allowed Claims or Equity Interests or any other parties in interest.

6.      *Nothing Herein Constitutes a Waiver of any Right to Object to Claims or Recover Transfers and Assets.*

The vote by a Holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Debtor or the Reorganized Debtor (or any party-in-interest, as the case may be) to object to that Holder's Allowed Claim or recover any preferential, fraudulent or other voidable transfer or assets, regardless of whether any Claims or Causes of Action of the Debtor or its Estate are specifically or generally identified herein.

7.      *The Information Used Herein Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors.*

Counsel to and other advisors retained by the Debtor have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Debtor have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

8.      *The Potential Exists for Inaccuracies, and the Debtor Has No Duty to Update.*

The statements contained in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Debtor has used their reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtor nonetheless cannot, and do not, confirm the current accuracy of all statements appearing in this Disclosure Statement. Furthermore, although the Debtor may subsequently update the information in this Disclosure Statement, the Debtor has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

9.      *No Representations Made Outside the Disclosure Statement Are Authorized.*

No representations concerning or relating to the Debtor, the Chapter 11 Case or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement,

should not be relied upon by you in arriving at your decision. You should promptly report unauthorized representations or inducements to counsel to the Debtor and the United States Trustee.

**IX.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES**

**A.    <u>Important Notice</u>**

The tax consequences of the Plan to the Debtor and to Holders of Claims and Equity Interests are discussed below.  This discussion of the federal income tax consequences of the Plan to the Debtor and Holders under U.S. federal income tax law, including the Internal Revenue Code of 1986, as amended (the "Tax Code"), is provided for informational purposes only.  While this discussion addresses certain of the material tax consequences of the Plan, it is not a complete discussion of all such consequences and is subject to substantial uncertainties.  Moreover, the consequences to a Holder may be affected by matters not discussed below (including, without limitation, special rules applicable to certain types of persons, such as persons holding non-vested stock or otherwise subject to special rules, nonresident aliens, life insurance companies, and tax-exempt organizations) and by such Holder's particular tax situation.  In addition, this discussion does not address any state, local, or foreign tax considerations that may be applicable to particular Holders.

Some of the issues discussed below are complex, and there can be no assurance of the accuracy of this information.  The Debtor's general bankruptcy counsel has no tax expertise and has not researched or analyzed tax consequences resulting from the Plan.  Accordingly, please take notice that:

**HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.**

**B.    <u>Federal Income Tax Consequences to Holders</u>**

Under the Plan, the tax consequences of the Plan to a Holder will depend, in part, on the type of consideration received in exchange for the Claim or Equity Interest and the tax status of the Holder, such as whether the Holder is an individual, corporation or other entity, whether the Holder is a resident of the United States, the accounting method of the Holder, and the tax classification of the Holder's particular Claim or Equity Interest.  For that reason, Holders should consult their own tax advisors with respect to the tax treatment for their particular claims or equity interests.

**C.    <u>Federal Income Tax Consequences to the Debtor</u>**

1.    <u>*In General*</u>.  Taxpayers are generally required to recognize taxable income as a result of cancellation of debt.  The receipt of borrowed funds is not subject to tax, on the premise that the debtor will repay them.  If the debt is cancelled without repayment, the recognition of income takes into account a debtor's receipt of the borrowed funds.

- 25 -

Special rules, however, apply to the cancellation of debt in a bankruptcy proceeding. Generally, a debtor in a bankruptcy case is not required to recognize income from the cancellation of debt. However, the debtor has to pay for this exclusion by reducing specified tax attributes, such as any net operating loss ("NOL") incurred by the taxpayer in the year that the debt discharge occurs, any NOL carryovers to that year, and tax credit and capital loss carryforwards.

## X.    CONFIRMATION REQUIREMENTS

### A.    <u>Confirmation Procedures and Acceptance by All Impaired Classes</u>

1.    *Confirmation Hearing*.  The Bankruptcy Court will consider confirmation of the Plan at the Confirmation Hearing, which will commence at _____ a.m. (prevailing Central Time) on _____, 2021 before the Honorable Jeff Norman, United States Bankruptcy Judge, in the United States Bankruptcy Court for Southern District of Texas, Houston Division, located at Bob Casey United States Courthouse, 515 Rusk Avenue, 4th Floor, Courtroom 403, Houston, Texas 77002. The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtor without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

2.    *Filing Objections to the Plan*.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to the confirmation of a plan of reorganization. **The Plan Objection Deadline is 5:00 p.m. (prevailing Central Time) on _____, 2021**. Any objection to the confirmation of the Plan must be in writing, must conform to the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas, must set forth the name of the objector, the nature and amount of Claims or Equity Interests held or asserted by the objector against the Debtor's estate or property, the basis for the objection and the specific grounds therefore, and must be filed with the Bankruptcy Court.

> **CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.**

### B.    <u>Statutory Requirements for Confirmation of the Plan.</u>

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.  The Debtor believes that: (i) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Debtor has complied or will have complied with all of the requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.  Specifically, the Debtor believes that the Plan satisfies or will satisfy the applicable confirmation requirements of section 1129 of the Bankruptcy Code set forth below:

- The Plan complies with the applicable provisions of the Bankruptcy Code;

- The Debtor complied with the applicable provisions of the Bankruptcy Code;

- The Plan has been proposed in good faith and not by any means forbidden by law;

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the cases, the confirmation of the Plan is reasonable; or (b) if it is to be fixed after confirmation of the Plan, is subject to the approval of the Bankruptcy Court for the determination of reasonableness;

- The Debtor has disclosed, or will disclose in advance of the Confirmation Hearing, the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of the Debtor, an affiliate of the Debtor participating in the Plan with the Debtor, or a successor to the Debtor under the Plan. The appointment to, or continuance in, such office by such individual, will be consistent with the interests of creditors and equity security holders and with public policy and the Debtor will have disclosed the identity of any insider that the Reorganized Debtor will employ or retain, and the nature of any compensation for such insider;

- Either each Holder of an Impaired Claim will have accepted the Plan, or will receive or retain under the Plan on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated on that date under chapter 7 of the Bankruptcy Code;

- Each Class of Claims or Equity Interests that is entitled to vote on the Plan will either have accepted the Plan or will not be Impaired under the Plan, or the Plan can be confirmed without the approval of such voting Classes pursuant to section 1129(b) of the Bankruptcy Code;

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Claims will be paid in full in cash on the Effective Date, or as soon thereafter as is reasonably practicable, and that priority tax claims will be paid in accordance with section 1129(a)(9)(C) of the Bankruptcy Code;

- At least one Class of Impaired Claims will accept the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in that Class;

- Confirmation of the Plan will not likely be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor thereto under the Plan; and

- All outstanding fees payable pursuant to section 1930 of title 28 of the United States Code will be paid when due.

1.      *Feasibility*.     Section 1129(a)(11) of the Bankruptcy Code requires that the bankruptcy court find that confirmation is not likely to be followed by the liquidation of the Reorganized Debtor or the need for further financial reorganization, unless the plan contemplates such liquidation.  For purposes of demonstrating that the Plan meets this "feasibility" standard, the Debtor has analyzed the ability of the Reorganized Debtor to meet its obligations under the Plan and to retain sufficient liquidity and capital resources to conduct its business.

The Debtor and the Reorganized Debtor, as applicable, believe that they will be able to perform their obligations under the Plan without further financial reorganization.  The Plan provides for payment of Allowed Claims, in the order of their priority.  At the present time, the Debtor believes that it will have sufficient funds, as of the Effective Date, to pay in full the expected payments required under the Plan to the Holders of Allowed Administrative Claims and any Allowed Cure Claims.  All claims not paid on the Effective Date shall be paid from future earnings. The Debtor anticipates generating sufficient funds from operations to fund all payments contemplated by the Plan.  Please refer to the Debtor's projections of income, expenditures and plan payments through the life of the Plan, included as Exhibit 3.

2.      *Best Interests Standard*.  The Bankruptcy Code requires that the Plan meet the "best interest" test, which requires that members of a Class must receive or retain under the Plan, property having a value not less than the amount which the Class members would have received or retained if the Debtor was liquidated under chapter 7 on the same date.

In chapter 7 cases, creditors and interest holders of a debtor are paid from available assets generally in the following order, with no junior class receiving any payments until all amounts due to senior classes have been paid in full: (a) holders of secured claims (to the extent of the value of their collateral); (b) holders of administrative and priority claims; (c) holders of unsecured claims; (d) holders of debt expressly subordinated by its terms or by order of the bankruptcy court; and (e) holders of equity interests.  Accordingly, the cash amount that would be available for satisfaction of claims (other than secured claims) would consist of the proceeds resulting from the disposition of the unencumbered assets of the Debtor, augmented by the unencumbered cash held by the Debtor at the time of the commencement of the liquidation.  Such cash would be reduced by the amount of the costs and expenses of the liquidation and by such additional administrative and priority claims that may result from termination of the debtor's business and the use of chapter 7 for purposes of a liquidation.

The Debtor believes that distributions to all Impaired Classes of Claims in accordance with the terms of the Plan would equal or exceed the net distribution that would otherwise take place in Chapter 7.  Therefore, the Debtor submits that the interests of creditors are best served by voting to accept the Plan.

3.      *Acceptance by Impaired Classes*.  The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accept the plan.  A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.  A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable and contractual rights to which the claim or the equity interest entitles the holder of such claim or equity interest; (b) cures any default and reinstates the original terms of such obligation; or (c)

provides that, on the consummation date, the holder of such claim or equity interest receives cash equal to the allowed amount of that claim.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds (2/3) in amount and a majority in number actually voting cast their ballots in favor of acceptance.

Claims in Classes 3 and 6 are not Impaired under the Plan, and, as a result, the Holders of such Claims are deemed to have accepted the Plan. Accordingly, the Debtor is not required to solicit their vote.

Claims in Classes 1, 2, 4 and 5 are Impaired under the Plan, and as a result, the Holders of Claims in Classes 1, 2, 4 and 5 are entitled to vote on the Plan. Pursuant to section 1129 of the Bankruptcy Code, the Holders of Claims in the such Classes must accept the Plan for the Plan to be confirmed without application of the "fair and equitable test" to Classes 1, 2, 4 and 5 and without considering whether the Plan "discriminates unfairly" with respect to Classes 1, 2, 4 and 5, as both standards are described herein. As explained above, Classes 1, 2, 4 and 5 will have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount and a majority in number of the Claims of Classes 1, 2, 4 and 5, as applicable (other than any Claims of creditors designated under section 1126(e) of the Bankruptcy Code), that have voted to accept or reject the Plan.

## C.    **Confirmation Without Acceptance By All Impaired Classes**

If one or more of the Impaired Classes of Claims or Equity Interests does not accept the Plan, the Plan may nevertheless be confirmed and be binding upon the non-accepting Impaired Class under the "cram down" provisions of the Bankruptcy Code if the Plan does not "discriminate unfairly" and is "fair and equitable" to the non-accepting Impaired Classes under the Plan.

1.    *Discriminate Unfairly*. The Bankruptcy Code requirement that a plan not "discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of equal rank. The Debtor believes that the Plan does not "discriminate unfairly" with respect to any Class of Claims or Equity Interests because no Class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank.

2.    *Fair and Equitable Standard*. With respect to the Impaired Classes of Unsecured Claims, Bankruptcy Code section 1129(b)(2)(B) provides that a plan is "fair and equitable" if it provides that (i) each holder of a claim of such class receives or retains on account of such claim, property of a value as of the effective date of the plan equal to the allowed amount of such claim; or (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain property under the plan on account of such junior claim or interest. The Debtor believes that the Plan meets these standards.

The Debtor believes that the requirements of Bankruptcy Code 1129(a) and (b) are met under the Plan. Accordingly, if necessary, the Debtor will seek Confirmation of the Plan under

the "cramdown" provisions of the Bankruptcy Code and believe it meets the requirements for Confirmation by the Bankruptcy Court notwithstanding the non-acceptance by an Impaired Class of Claims.

**D.      Non-Confirmation of the Plan**

If the Plan is not confirmed by the Bankruptcy Court, the Bankruptcy Court may permit the Filing of an amended plan, dismiss the Bankruptcy Case, or convert the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code.   The Debtor believes that this would result in unnecessary costs and delay.

**E.      Consummation of the Plan**

The Plan will be consummated on the Effective Date.

## XI.      ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed, the potential alternatives include (a) alternative plans under Chapter 11 (including a liquidation plan), (b) dismissal of the case, or (c) conversion of the case to a case under chapter 7 of the Bankruptcy Code.

**A.      Alternative Plans of Reorganization**

If the Plan is not confirmed, the Debtor or, subject to further determination by the Bankruptcy Court as to extensions of exclusivity under the Bankruptcy Code, any other party in interest in the Chapter 11 Case could attempt to formulate and propose a different plan.  Such plan might involve a reorganization, an orderly liquidation of the Debtor's assets, or a combination thereof.  The Debtor believes that its Plan will enable creditors to be paid the maximum amount possible for their Allowed Claims.

**B.      Liquidation under Chapter 7 of the Bankruptcy Code**

If the Plan (or any other plan) is not confirmed, the Bankruptcy Case may be converted to a liquidation case under chapter 7 of the Bankruptcy Code.  In a chapter 7 case, a trustee would be elected or appointed to liquidate the assets of the Debtor.  The proceeds of the liquidation would be distributed to Holders of Claims and Equity Interests of the Debtor in accordance with the priorities established by the Bankruptcy Code.

In general, the Debtor believes that there is substantial equity in its assets that, upon liquidation under chapter 7 of the Bankruptcy Code, may result in a payment of all Allowed Claims in full.  However, there may be a substantial diminution of the value of the interests of creditors in the chapter 7 because of (i) additional administrative expenses involved in the appointment of a trustee and attorneys, accountants and other professionals to assist such trustee; (ii) additional expenses and claims, some of which might be entitled to priority, which would arise by reason of the liquidation; (iii) failure to realize the full value of the Debtor's assets; and (iv) the substantial delay which would elapse before creditors would receive any distribution on account of their

Claims.  Accordingly, the Debtor believes that the Plan is superior to liquidation of the Debtor's assets under Chapter 7.

## XII.   SUMMARY AND CONCLUSION

The Plan provides for an orderly and prompt exit from bankruptcy.  The Debtor believes that its effort to maximize the return for Holders of Claims and Equity Interests have been full and complete.  The Debtor further believe that the Plan meets the requirements of the Bankruptcy Code and is in the best interests of all creditors.

Dated: January 15, 2021.

Keiv Hospitality, LLC
By its President

By: _/s/ Ben Mousavi_
Ben Mousavi

Respectfully submitted,

**OKIN ADAMS LLP**

By: _/s/ Timothy L. Wentworth_
Timothy L. Wentworth
Texas Bar No. 21179000
Email: twentworth@okinadams.com
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 888.865.2118

**ATTORNEYS FOR THE DEBTOR**